J-A06031-20

2020 PA Super 80

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY MCGHEE | : | |
| | : | |
| Appellant | : | No. 1986 EDA 2018 |

Appeal from the Judgment of Sentence Entered April 25, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007992-2015

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED MARCH 31, 2020**

Appellant Rodney McGhee appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on April 25, 2018. Following our review, we affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

FACTS
[Victim] [D.R][1] was seven years old when she and her two siblings moved in with her aunt, [A.R.] and her daughter.[2] 03/31/17 N.T. at 31-33; 04/03/17 N.T. at 33-34.[1] Sometime around 2002, Appellant moved into the home as well after beginning a relationship with [A.R.]. 03/31/17 N.T. at 34; 04103/17 NJ. at 35. [Victim]'s aunt worked long hours during the

---

* Former Justice specially assigned to the Superior Court.
[1] In order to protect the privacy of the Victim, we have replaced her name and that of family members who share her last name with initials.
[2] D.R. was born in November of 1991. The record reveals that when she was seven years old, her father was incarcerated, and her mother passed away. N.T., 4/3/17 at 32-33.

night as a CNA. 03/31/17 N.T. at 35. While [Victim]'s aunt was at work, Appellant would occasionally watch the children. 04/03/17 N.T. at 36-37.

When the [Victim] was nine, Appellant began tickling the [Victim] on her vagina outside of her clothing. 04/03/17 N.T. at 38. Appellant later began instructing the [Victim] to come into his bedroom. Id. at 39. On one occasion, [Victim] and Appellant were watching a movie and eating food when Appellant began to touch her breasts, buttocks, and vaginal areas. Id. N.T. at 39-40. Appellant lubricated his penis with baby oil and penetrated [Victim] Id. at 41. After this occurrence, sexual acts between [Victim] and Appellant continued for a couple of years. Id. at 41-42. Appellant also made [Victim] perform oral sex on him, and he also performed oral sex on her. Id. at 44 45. Appellant told [Victim] that her aunt never cared about her or her siblings and that her aunt wouldn't believe the allegations if she ever told her. Id. at 47.

When [Victim] was thirteen, Appellant became jealous that she was talking to younger guys, which made [Victim] no longer interested in having sexual relations with him. Id. at 47-48. At this point, [Victim] made up a lie to her aunt so Appellant could be removed from the home. Id. at 48. In 2015, [Victim] confessed to her aunt about her sexual relationship with Appellant after her aunt tricked her into thinking he had already disclosed the information to her. Id. at 51. [Victim]'s aunt became suspicious of their relationship when Appellant began calling her home years after they had broken up. 03/31/17 N.T. at 40. After [Victim] confessed, the police were called and she was taken to the Special Victims Unit. 04/03/17 N.T. at 53.

_____

[1]N.T. refers to the Notes of Testimony taken at the jury trial before the Honorable Gwendolyn N. Bright on March 30 - April 4, 2017.

Trial Court Opinion, filed 12/21/18, at 1-2.

Following a jury trial, on April 4, 2017, Appellant was convicted of Rape of a Minor, Unlawful Contact with a Minor, Involuntary Deviate Sexual Intercourse (IDSI), Statutory Sexual Assault, Endangering Welfare of Children, and Indecent Assault. On April 25, 2018, Appellant was sentenced to an aggregate term of six (6) years to twelve (12) years in prison, to be

followed by seventeen (17) years of probation and lifetime registration. Appellant filed his Motion for Reconsideration of Sentence on May 6, 2018, wherein he challenged, *inter alia*, the weight of the evidence to sustain his convictions. **See** ¶ 4. The trial court denied Appellant's post sentence motion in its Order entered on May 9, 2018.

Appellant filed a timely appeal on May 11, 2018, and the trial court issued its Order pursuant to Pa.R.A.P. 1925 on August 1, 2018. Appellant filed his six-page concise statement of matters complained of on appeal on August 21, 2018. Therein, Appellant raised seven (7) allegations of error, several of which included subissues.[3] The trial court issued its Rule 1925(a) Opinion wherein it found no merit to any of the claims on December 21, 2018.

_____

[3] We remind Appellant that where a Rule 1925(b) Statement does not identify sufficiently the issues raised on appeal, this Court has found waiver of all issues on appeal and explained as follows:

> In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925." **Lord**, 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." **Id.** This Court explained in **Riley v. Foley**, 783 A.2d 807, 813 (Pa.Super. 2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." **Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa.Super. 2001). "Even if the trial court correctly guesses the issues

J-A06031-20

In his appellate brief, Appellant presents the following Statement of the Questions Involved:

> 1.      Whether the trial court judge abused her discretion by exercising a judgment that was not only erroneous, but was also manifestly erroneous in the court's ruling that:

_____

> Appellants raise[ ] on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." ***Commonwealth v. Heggins***, 809 A.2d 908, 911 (Pa.Super. 2002).

***Kanter v. Epstein***, 866 A.2d 394, 400 (Pa.Super. 2004), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* ***Spector, Gadon & Rosen, P.C. v. Kanter****,* 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006). We have further stated:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [***Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that ***Lord*** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal....

***Lineberger v. Wyeth***, 894 A.2d 141, 148 (Pa.Super. 2006) (quoting ***Commonwealth v. Dowling***, 778 A.2d 683, 686-87 (Pa.Super. 2001)).

Herein, Appellant's voluminous concise statement made it challenging to discern whether he raised therein the issues he presents in his appellate brief.  Notwithstanding, Appellant did include in his concise statement the first two claims he develops on appeal; therefore, we decline to find those issues waived.

- 4 -

A)      The Department of Health Services (DHS) records of the Victim's incarceration were not to be produced and reviewed or that the [c]ourt was to proceed without the production of those records.

B)      By permitting a Philadelphia Police Detective to give expert opinion testimony as to the concept of "grooming" when that officer was never qualified to be an expert witness;

C)      By not permitting defense counsel to cross examine' [sic] the Victim's aunt and the Victim as to when a child molester who had recently been released from prison was allowed to reside at the same residence; and

D)      By not permitting defense counsel to examine the Victim's aunt and the Victim to explore the fact that men were sneaking into their residence through the Victim's window.

2. The verdict rendered against the Appellant was against the weight of the evidence especially where defense counsel brought out so many falsehoods that the Victim's aunt engaged in through trickery and deception in order to manipulate the Victim into telling the story that she did about [Appellant].

3. The Pennsylvania Supreme Court is in the process of ruling on the constitutionality of the Sexual Offender's Registration and Notification Act (SORNA) as a result may rule that the ten (10) year period of supervision that [Appellant] was sentenced to after his period of incarceration has ended is also unconstitutional, thereby requiring [Appellant] to be remanded to the trial court level for resentencing.

Appellant's Substitution Brief at 4-5.

Appellant's first issue presents numerous challenges to the trial court's exercise of its discretion pertaining to evidentiary issues. Specifically, Appellant avers the trial court abused its discretion in failing to review and rule upon the admissibility of the victim's purported DHS mental health records, in allowing a detective to provide what Appellant deems to be an expert opinion, and in sustaining two objections made by the Commonwealth

in response to defense counsel's questioning. ***See*** Brief for Appellant at 11-31.

In reviewing evidentiary challenges, we note:

[o]ur standard of review regarding the admissibility of evidence is an abuse of discretion. The admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

***Commonwealth v. Collins***, 70 A.3d 1245, 1251-1252 (Pa.Super. 2013), *appeal denied*, 80 A.3d 774 (2013) (citations and quotations omitted).

In his concise statement, Appellant averred the trial court had erred in failing to allow the defense to produce any DHS records and that such evidence "would have been relevant to helping the trier of fact determine whether those records were helpful in determining whether [Appellant] was guilty or innocent." ***See*** Defendant's Statement of Matters Complained of on Appeal Pursuant to Rule 1925(B) of the Rules of Appellate Procedure statement at 4, ¶ 3(d). (unnumbered). In his appellate brief, Appellant asserts he had been prejudiced by the trial court's failure to require the production of those documents.

A review of the record reveals that when the trial court asked defense counsel to produce the records from DHS he sought to have reviewed, counsel indicated he did not have them because he "pulled [the] subpoena" although he "might send the subpoena back." N.T., 3/30/17, at 12. The trial court

responded, "That's up to you. But at this point I really don't have anything [to] evaluate." *Id*. at 13. Thus, Appellant's assertion the trial court "refused" to review DHS records pertaining to the victim is refuted by the record. Moreover, it was not the job of the trial court to require Appellant to submit records for its review when it did not foreclose counsel from doing so; therefore, any resulting prejudice from counsel's failure to do so cannot be attributed to the trial court.

Appellant next baldly argues Detective Carol Farrell provided an expert opinion on the concept of "grooming" a victim, despite the trial court's prior ruling that she would not be proffering an expert opinion. The relevant testimony is as follows:

> BY MS. RUDOPH:
> Q. Now, detective, have you received during the course of your time in Special Victims Unit and the course of your training, have you received information on the concept called grooming?
> A. Yes.
> Q. All right. And can you just describe generally what grooming is?
> MR. CAPONE: Objection, again, Your Honor.
> MS. RUDOLPH: Your Honor, I think this was addressed in our motion.
> THE COURT: Overruled.
> BY MS. RUDOLPH:
> Q. You can answer the question, detective.
> A. Okay. Grooming is when a predator identifies a child who is a potential victim, gains their trust, and then he essentially begins the assault.
> Q. Are there any specific things that are involved in grooming?
> A. First, generally, they like to identify a potential victim. So depending on where they go on their -
> THE COURT: I'm going to sustain as to this.
> MR. CAPONE: Thank you, Your Honor.

MS. RUDOLPH: That's fine. Your Honor.

THE COURT: Even though there's no objection, based on previous discussions. So that's stricken.

MS. RUDOLPH: Yes, Your Honor. Those are all the questions I have for the detective. Thank you.

THE COURT: All right. You may cross-examine.

MR. CAPONE: Thank you, Your Honor. Can you instruct the jury when you strike something, Your Honor. I don't know if they know what that means.

THE COURT: I instructed them during the preliminary instructions[.]

MR. CAPONE: Okay.

N.T. 3/31/17, at 24-25; **see also** Brief for Appellant at 21-22.

In the single page of argument Appellant devotes to this issue in his appellate brief, he posits that the aforementioned testimony constituted an impermissible expert opinion in that "it gave the Commonwealth a kind of authoritativeness that an expert can give to the prosecution." Brief of Appellant at 24. We disagree, for Detective Farrell's one sentence definition of "grooming" was in response to a request for her to provide a "general" description of the concept. Significantly, the trial court prevented any further discussion pertaining to more "specific things." As the trial court observes:

Appellant also alleges that the [c]ourt erred in "permitting Detective Carol Farrell of the Sex Offender Unit (SVA) to testify to the concept of 'grooming' [], all of which constituted expert testimony." The [c]ourt did not allow the detective to form an expert opinion on grooming. In fact, that testimony was specifically prohibited. Pennsylvania Rule of Evidence 701 outlines what constitutes opinion testimony by lay witnesses. "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Pa.R.E. 701. The detective was only permitted to testify as to what the term

- 8 -

means, she was not permitted to opine that grooming had occurred in this case. The jury was able to make the ultimate determination based on the detective's testimony, but the detective did not opine that Appellant groomed the Complainant.

Trial Court Opinion, filed 12/21/18, at 7-8.

Appellant next contends the trial court committed reversible error in refusing to permit the jury to hear testimony that "what Appellant believed to be a convicted child molester" had been residing in her home prior to the time in which Appellant resided there. Appellant argues such information "would have been relevant to demonstrating the kind of household that [Victim] grew up in, prior to [Appellant's] arrival." Brief for Appellant at 26. The trial court found that such evidence was irrelevant as it pertained to the Victim's allegations against Appellant and that it "would simply be used to either assassinate the character of the [Victim] or to confuse the issues with the jury." Trial Court Opinion, filed 12/21/18, at 7. We agree.

> In general, relevant evidence, i.e., evidence that logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact, is admissible. However, relevant evidence may be excluded if its probative value is outweighed by the likelihood of unfair prejudice. Admission of evidence rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury. A trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Wilson***, 147 A.3d 7, 15 (Pa.Super. 2016) (citations omitted).

We begin by noting that Appellant's brief contains no citations to case law in support of his contention that evidence of an alleged convicted child molester's residence in A.R.'s home should have been admitted to counter the Victim's testimony pertaining the Appellant's contact with her. Where an appellant does not include citation to pertinent case law or other authority in support an argument, he or she waives the claim. **Id**. (citing **Commonwealth v. Hernandez**, 39 A.3d 406, 412 (Pa.Super. 2012).

Moreover, even if Appellant had not waived this claim, we would discern no abuse of discretion on the trial court's part in concluding that the effect of the testimony would have been more prejudicial than probative and may have confused the jury. Appellant proffered no evidence that the "convicted child molester," in fact, existed, and in his appellate brief he refers to this individual as one "whom he **believed** to be a convicted child molester." **Id**. at 25 (emphasis added). While A.R. testified that her ex-husband's brother had resided in her home for approximately one week following his release from jail but prior to the time Appellant began living there, no evidence was presented as to why he had been imprisoned. N.T., 4/3/17, at 7-78.

Absent such evidence, testimony regarding this individual's residence only would have led to speculation on the part of the jury and detracted from the issues before it which concerned the victim's allegations against Appellant. Moreover, this evidence was properly excluded because it was not relevant. This Court has held that a witness may not be contradicted on a collateral

matter such as an allegation that a victim previously had been sexually abused by another individual, for such allegation does bear directly on whether or not the appellant sexually abused that victim. ***Commonwealth v. Holder***, 815 A.2d 1115, 1119 (Pa.Super. 2003), *appeal denied*, 573 Pa. 703, 827 A.2d 430 (2003). Accordingly, this claim would garner Appellant no relief.

In the final subpart of his first issue, Appellant asserts defense counsel should have been permitted to cross-examine the Victim regarding the fact that young men had been sneaking into her bedroom window at night when her aunt was not at home. Appellant claims the Victim's prior sexual activity was not prohibited by the Rape Shield Law[4] because, "it was relevant to the

---

[4] The relevant statute reads as follows:

### § 3104. Evidence of victim's sexual conduct

**(a) General rule.--**Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.--**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct and reputation evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make

kind of activity that was going on at the Victim's house and that [Appellant] tried to put a stop to it." Brief for Appellant at 30-31. In disposing of this issue, the trial court determined that such an attempt by the defense to impugn the Victim's character would have had a more prejudicial than probative effect. Trial Court Opinion, filed 12/21/18, at 7.

> We will reverse a trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment. An abuse of discretion occurs where the record shows that the trial court, in reaching a conclusion, overrides or misapplies the law, or exercises its judgment in a manifestly unreasonable manner or as the result of partiality, prejudice, bias, or ill will.

_____

findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

**(c)  Applicability.--**This section shall apply to prosecutions of any of the following offenses, including conspiracy, attempt or solicitation to commit any of the following offenses, enumerated in this title:

Chapter 27 (relating to assault).
Chapter 29 (relating to kidnapping).
Chapter 30 (relating to human trafficking).
Chapter 31 (relating to sexual offenses).
Section 4302 (relating to incest).
Section 4304 (relating to endangering welfare of children), if the offense involved sexual contact with the victim.
Section 6301(a)(1)(ii) (relating to corruption of minors).
Section 6312(b) (relating to sexual abuse of children).
Section 6318 (relating to unlawful contact with minor).
Section 6320 (relating to sexual exploitation of children).

18 Pa.C.S.A. § 3104.

*Commonwealth v. Fink*, 791 A.2d 1235, 1240 (Pa.Super. 2002) (citation omitted).

In summarizing prior caselaw pertaining to the admissibility of evidence under the Rape Shield Law, the *Fink* Court stated:

> • The Rape Shield Law bars prior instances of sexual conduct, except those with the defendant *where consent of the victim is at issue and the evidence is otherwise admissible.* 18 Pa.C.S.A. § 3104(a).
> • If the prior sexual conduct was a prior sexual assault, then the Rape Shield Law does not apply and the evidence is evaluated under the general evidentiary rules*.*
> • If the prior sexual conduct does not involve the defendant or involves the defendant but consent is not an issue, then it must be relevant to show bias against the defendant or to attack the credibility of the victim*.* A three-part test for admissibility applies in such a case*.*
> • **If the offer of proof shows only that others in addition to the defendant had sexual contact with the victim, but does not show how the evidence would exonerate the defendant, evidence of prior sexual activity is inadmissible under the Rape Shield Law.**
> • Evidence of a prior sexual assault by another man is not admissible to show knowledge by the child victim of sexual techniques or nomenclature unless the evidence exonerates the defendant.
> • Proffers under the Rape Shield Law cannot be vague, conjectural, or speculative.

*Commonwealth v. Fink*, 791 A.2d 1235, 1242–43 (Pa.Super. 2002) (case citations omitted) (boldface emphasis added).

Appellant sought to introduce testimony that the Victim may have been engaging in sexual activity with young men her own age around the time in which Appellant was sexually abusing her. In light of the foregoing, this is

- 13 -

precisely the type of evidence that is inadmissible under the Rape Shield Law. ***See*** 18 Pa. C.S.A. § 3104(a).

In addition, Appellant's suggestion that the evidence would have been relevant to show her allegations against him were in response to his attempts to stop the Victim's relationships with young men is belied by the fact that she did not report the abuse until more than a decade later, when she was twenty-five (25) years old. N.T., 4/3/17 at 31, 50. Also, as the Commonwealth observes, Appellant himself testified that on one occasion he observed "three or four big guys" leaving the Victim's room and smelled marijuana emanating therefrom. Commonwealth's Brief at 17 (citing N.T. 4/3/17, at 104). Thus, the jury heard testimony that the Victim had boys in her bedroom. Therefore, our review of the record reveals no trial court error abuse of discretion.

Appellant next argues the verdict was against the weight of the evidence. His challenge is grounded in what he deems to be the "incredible" testimony of A.R., and he stresses that "we do not convict people on the basis of such suspicions." He likens A.R.'s testimony to that of "'rogue cops' who coerce confessions from defendants in their custody" and claims that A.R. obtained information about the improper contact between Appellant and the

Victim only after she "engaged in trickery and deception." Brief for Appellant

at 31-34.2.[5]

When considering this challenge, we apply the following standard of

review:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course

_____

[5] We note that in his concise statement of matters complained of on appeal, Appellant lists additional reasons why he deems the verdicts had been against the weight of the evidence; however, he does not develop an argument with regard to these claims in his appellate brief. Therefore, those undeveloped claims are waived. **Commonwealth v. Cannavo**, 199 A.3d 1282, 1289 (Pa. Super. 2018).

> pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1055 (2013) (internal citations omitted).

*Commonwealth v. McClelland*, 204 A.3d 436, 447 (Pa.Super. 2019) *appeal denied*, 217 A.3d 214 (Pa. 2019).

In rejecting Appellant's challenge to the weight of the evidence, the trial court reasoned as follows:

> Appellant lists a myriad of reasons why the verdict was against the weight of the evidence. First, Appellant points out [Victim's] lack of prompt complaint. [Victim] did not go to the police until thirteen years after she alleges the initial incident to have happened. [Victim] clearly was unable to discern between right and wrong during her sexual relationship with Appellant. [Victim] testified that she enjoyed the relationship and that the fondling and sex made her feel good. It was not until she was older that she realized the relationship was wrong, and even at that time she still did not tell her aunt what truly happened. Instead, she made up a lie that would make her aunt want Appellant to leave the house. The [c]ourt found this to be plausible and so did the jury.
> The remainder of Appellant's reasons of why the verdict was against the weight of the evidence deal with various issues Appellant has with [Victim's] aunt, some of which was not evidence presented at trial. Appellant points out that [Victim] and her aunt have discrepancies with dates, years, and the age of [Victim] when the events occurred. However, the incidents occurred over thirteen years ago, and it was clear from the testimony that the [V]ictim and the witness were unable to recall the exact time frame on the stand. It was also clear to the [c]ourt that Appellant was more interested in attacking [A.R.'s] character based on the numerous statements made by him during trial as well as during sentencing. Instead of showing remorse, Appellant took his time to address the [c]ourt during sentencing as an opportunity to continue to attack [A.R.'s] character. [Victim] testified as to what happened to her and regardless of any alleged

motive of her aunt, [Victim] testified on her own will based on her memory of what happened. The jury was free to believe her testimony. There was nothing shocking about the verdict. No relief is necessary.

Trial Court Opinion, 12/21/18, at 5.

Following our review, we find that the trial court's assessment enjoys record support. For this reason, we conclude that the trial court properly exercised its discretion in denying Appellant's motion for a new trial based on the weight of the evidence. Thus, this issue lacks merit.

Appellant's final claim relates to the Pennsylvania Supreme Court's alleged pending review of SORNA[6] in an unrelated matter. Specifically, Appellant refers to "Commonwealth v. Torsillieri," a matter in which a decision allegedly was issued on August 31, 2019, in the Court of Common Pleas of Chester County, and which Appellant indicates is on appeal before our

---

[6] Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.41 (SORNA I) Act of Dec. 20, 2011, P.L. 446, No. 111, amended as, 42 Pa.C.S.A. §§ 9799.10-9799.41, as amended and replaced by 2018, Feb. 21, P.L. 27, No. 10, § 19, immediately effective. Reenacted 2018, June 12, P.L. 140, No. 29, § 14, immediately effective. 42 Pa.C.S.A. §§ 9799.51-9799.75 (SORNA II). Act 10 (now Act 29 (2018), Feb. 21, P.L. 27, No.10, § 6, imd. Effective. Reenacted 2018, June 12, P.L. 140, No. 29, § 4, imd. Effective (referred to collectively as Act 10). Act 10 was enacted in response to **Commonwealth v. Muniz**, 640 Pa. 669, 164 A.3d 1189 (2017) and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa.Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018) (Table) (concluding challenge to appellant's increased registration requirements under SORNA implicated legality of sentence imposed). Essentially, Act 10 sought to eliminate SORNA's "punitive" effects. We note that the issue of whether Act 10 (now Act 29) is unconstitutional in light of **Muniz** is also before the Pennsylvania Supreme Court. **See Commonwealth v. Lacombe**, 35 MAP 2018 (Pa. 2018).

Supreme Court. Appellant has neither provided a citation to this case nor affixed a copy of it to his appellate brief for this Court's review.

Initially, we note that while Appellant did not raise this claim in his concise statement, to the extent it can be construed as a challenge to the legality of his sentence, such challenge cannot be waived, so long as a court has jurisdiction to address it. **See Commonwealth v. Adams-Smith**, 209 A.3d 1011, 1021 (Pa.Super. 2019). On April 25, 2018, the trial court sentenced Appellant to an aggregate term of six years to twelve years' imprisonment to be followed by seventeen years of probation. Appellant was determined not to be a sexually violent predator under SORNA, but he is subject to a lifetime registration requirement as a result of his conviction of rape of a child. **See** 42 Pa.C.S.A. § 9799.55(b)(2)(i)(A).

Appellant has failed to specify how he deems the issues **Torsillieri** apparently raised on appeal may be relevant to the instant matter. To the contrary, a similar constitutional claim to the one allegedly asserted in **Torsillieri** is not properly before us because Appellant was not subjected to current SORNA registration and reporting requirements below.

Significantly, Appellant has not specifically challenged herein the legality of his sentence or the registration requirements to which he will be subjected going forward. Instead, Appellant simply notes at the conclusion of his argument that "a decision by the Pennsylvania Supreme Court in the matter of Commonwealth v. Torsillieri is not expected until approximately

early 2020. It is possible that that decision could have a major impact on the instant matter and require that this case be remanded back to the trial court for re-sentencing." Brief for Appellant at 45. Should **Torsillieri** or another matter provide a future basis upon which Appellant may rely to show his sentence is illegal, Appellant may raise a claim at that time. **See Adams-Smith, supra**. Until then, this Court will not attempt to predict the future of decisions of this or the Supreme Court.

Judgment of sentence affirmed.

Judge Stabile joins the Opinion.

Judge King concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2020