J-S03028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v. :
:
:
:
DYLAN CHIARAMONTE :
:
Appellant : No. 839 WDA 2021

Appeal from the Judgment of Sentence Entered February 17, 2021
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002709-2018

BEFORE: LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: APRIL 11, 2022**

Dylan Chiaramonte appeals from the judgment of sentence imposed following his convictions for rape of a child and related offenses.[1] We affirm.

Between 2011 and 2016, Chiaramonte sexually abused his niece ("the victim") beginning when she was four years old.[2] The victim's relative referred to the abuse when talking to a school counselor, who informed police. Chiaramonte was arrested and charged with numerous sexual offenses.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(a)(7), 3126(a)(7), 6301(a)(1)(ii).

[2] For a more detailed description of Chiaramonte's sexual abuse of the victim, **see** Trial Court Opinion, 7/15/21, at 2-24.

Chiaramonte filed a pre-trial motion *in limine* to limit the testimony of the Commonwealth's expert witness, Carol A. Hughes, M.A., ("Hughes") a licensed psychologist who specializes in the treatment of sexual abuse victims and offenders. Therein, Chiaramonte generally sought to limit Hughes's report and testimony to facts and opinions regarding specific types of victim responses and victim behaviors pursuant to 42 Pa.C.S.A. § 5920(b)(2). **See** Motion *in Limine*, 3/11/20, at 1-2. The trial court scheduled a hearing on the motion. At the hearing, Chiaramonte sought the preclusion of specific portions of Hughes's expert report, including her references to a certain "class of perpetrators."[3] N.T. Motions Hearing, 9/8/20, at 6-8. Following the hearing, the trial court denied the motion. **Id.**

The matter proceeded to a jury trial in September 2020. At trial, the Commonwealth presented the testimony of Hughes, who testified without objection regarding general descriptions of false reports of abuse and the factors she uses to determine if a victim was coached.

At trial, the Commonwealth also called Daisy Perez ("Perez"), a forensic interviewer at the Child Advocacy Center ("CAC"), who interviewed the victim on September 26, 2017. The Commonwealth did not call Perez as an expert witness. Perez testified about her education and described the process and

---

[3] In the copy of Hughes's expert report attached to Chiaramonte's motion *in limine*, Hughes generally discussed a victim's delayed reporting of abuse due to the relationships between the abuser and victim, including grooming behavior by the abuser and the victim's fear of the consequences of reporting the abuse.

nature of forensic interviews generally. She testified that she conducted over 150 forensic interviews at CAC. She also testified about "red flags" she looked for in her experience as a forensic interviewer, specifically as it relates to children who are "coached." N.T., 9/14-17/20, at 244. Over Chiaramonte's objection,[4] Perez testified that she did not recall any "red flags" during the interview with victim. *Id*. at 244-45.

At the conclusion of trial, the jury found Chiaramonte guilty of one count of rape of a child, two counts of involuntary deviate sexual intercourse, and one count each of aggravated indecent assault, indecent assault, and corruption of minors.

On February 17, 2021, the trial court sentenced Chiaramonte to an aggregate prison sentence of twenty to forty years followed by fourteen years of probation. Chiaramonte filed post-sentence motions, which the trial court denied.[5] Chiaramonte filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

_____

[4] Chiaramonte did not seek to limit Perez's testimony in a pre-trial motion *in limine*, but his trial counsel objected to "credibility" when the Commonwealth asked whether she recalled "red flags" during the victim's interview. The trial court overruled the objection.

[5] We note the trial court entered its opinion and order denying Chiaramonte's timely post-sentence motions after more than 120 days and without expressly extending the time for deciding the motions. *See* Pa.R.Crim.P. 720(B)(2), (3)(a)-(b). Although the trial court should have denied Chiaramonte's post-sentence motions by operation, Chiaramonte timely appealed within the thirty days of trial court's order. *See Commonwealth v. Khalil*, 806 A.2d 415, 419 (Pa. Super. 2002).

Chiaramonte raises the following issues for our review:

1. Did the [c]ourt err in permitting the Commonwealth to elicit expert testimony regarding false reports and the coaching of sexual abuse victims, when such testimony encroached upon the jury's determination of the subject child's credibility?

2. Did the [c]ourt err in permitting a forensic interviewer to testify that she did not observe any "red flags" during her forensic interview of the subject child, as such testimony encroached upon the jury's determination of the subject child's credibility?

Chiaramonte's Brief at 4.

In both of the issues before us, Chiaramonte challenges the trial court's admission of certain portions of witness testimony. Our standard of review is as follows: "The admission of evidence is committed to the sound discretion of the trial court[.]" **Commonwealth v. Benvenisti-Zarom**, 229 A.3d 14, 25 (Pa. Super. 2020) (internal citation omitted), *appeal denied*, 239 A.3d 1095 (Pa. 2020). "[A]n appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Commonwealth v. McGhee**, 230 A.3d 1277, 1283 (Pa. Super. 2020), *appeal denied*, 244 A.3d 345 (Pa. 2021) (internal citation omitted).

Further, "expert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted

- 4 -

in the relevant field." ***Commonwealth v. Maconeghy***, 171 A.3d 707, 712 (Pa. 2017) (citing Pa.R.E. 702).

In cases of sexual assault, 42 Pa.C.S.A. § 5920 permits the following expert evidence:

> **(b) Qualifications and use of experts.—**
>
> * * * *
>
> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.
>
> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.C.S.A. § 5920(b); ***see also Commonwealth v. Jones***, 240 A.3d 881, 896-97 (Pa. 2020) (holding that that under Section 5920, "expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations," but recognizing that such a determination must "be assessed on a case-by-case basis").

In his first issue, Chiaramonte argues that Hughes's testimony regarding general descriptions of false reports of abuse and the factors she uses to determine if a victim was coached impermissibly encroached on the jury's function to consider the victim's credibility.

The trial court, in its opinion, found Chiaramonte's issue waived because he failed to object at trial. ***See*** Trial Court Opinion, 7/15/21, at 29. A review of the instant record establishes that Chiaramonte did not preserve this particular challenge for our review. As explained above, the trial court denied

Chiaramonte's motion *in limine* and arguments at the pre-trial hearing seeking to limit Hughes's testimony to facts and opinions regarding victim responses and victim behaviors under Section 5920(b)(2) and, specifically, Hughes's references to classes of potential perpetrators. **See** Motion *in Limine*, 3/11/20, at 1-2; N.T. Motions Hearing, 9/8/20, at 6-8. Additionally, when Hughes testified about her general experiences with victims giving false reports and being coached, Chiaramonte did not object. **See** N.T. Trial, 9/14-17/20, at 74-75. Thus, Chiaramonte's first issue is waived. **See** Pa.R.E. 103(a) (requiring contemporaneous objections to a trial court's evidentiary ruling); Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal); **Commonwealth v. Radecki**, 180 A.3d 441, 455 (Pa. Super. 2018) (holding that claims not raised in the trial court are waived).[6]

In his second issue, Chiaramonte challenges the trial court's admission of testimony concerning "red flags" from Perez, whom the Commonwealth

---

[6] Even if Chiaramonte had preserved his first issue for our review, we would have determined that Hughes's expert opinions regarding the indicia of false reports and coaching constituted permissible testimony regarding victim responses and victim behaviors under Section 5920(b)(2) rather than an opinion regarding the credibility of other witnesses or the specific victim prohibited by Section 5920(b)(3). **See Commonwealth v. Smith**, 206 A.3d 551, 562 (Pa. Super. 2019) (holding that an expert's general testimony about the dynamics of sexual violence and victim responses did not improperly bolster the victim's credibility); **see also** Trial Court Opinion, 7/15/21, at 28-29 (concluding that Hughes offered proper opinions under Section 5920, because she did not opine on the specific victim's credibility).

called as a fact witness. In addition to her testimony regarding her forensic interview with the victim, Perez testified about her education, training, and experience as a forensic interviewer. N.T., 9/14-17/20, at 241. She described the process of forensic interviews as "unscripted" and "non-leading," and noted that she received specialized training to conduct the forensic interviews. *Id*. at 242-43. She stated that she conducted 150 to 200 forensic interviews. *See id*. at 243.

The Commonwealth then engaged Perez in the following exchange:

Q. And when you're performing a forensic interview, are there any red flags that you look for in terms of whether a child has been coached as to what to say?

A. Yes. I would look for what words the child used. Were they exactly the same as to what I was told, for example, by parents who brought the child in. That could possibly be a red flag. Another red flag would be the details. Children who are telling the truth tend to have a lot of details to their report.

Q. I want to ask you, did you perform a forensic interview with [the victim]?

[Perez answered that she interviewed the victim on September 26, 2017]

A. And when you were performing this interview . . ., do you recall any red flags during that interview?

[Chiaramonte's counsel]: Objection, Your Honor. That goes way too close to credibility. Way too close.

[Commonwealth]: She talked about her experience as a forensic interviewer.

THE COURT: The objection is overruled.

* * * *

Q. Did you observe any red flags during your interview with [the victim]?

A. No, I didn't.

**See** N.T., 9/14-17/20, at 244-45.  Perez continued to testify that she recalled the victim providing "a lot of detail" during the interview and that she talked to the victim's mother and heard "a little bit from the mother's perspective of things." **Id**. at 245.

Chiaramonte first claims that Perez offered expert opinions despite the Commonwealth's failure to qualify her as an expert witness.[7]  Second, Chiaramonte contends that Perez's general descriptions of "red flags" during forensic interviews, and her subsequent testimony that there were no "red flags" when she interviewed the victim in the instant case, "unquestionably amounted to testimony that the victim was not coached and was telling the truth in her forensic interview."  Chiaramonte's Brief at 14, 16.

The trial court considered Chiaramonte's second issue both at trial and in its opinion and determined that it lacked merit.  The court reasoned that "Perez's testimony offered no conclusion as to the credibility of [the victim.]" Trial Court Opinion, 7/15/21, at 32.  In reaching its conclusion, the trial court relied on **Commonwealth v. T.B.**, 232 A.3d 915 (Pa. Super. 2020), *appeal denied*, 240 A.3d 98 (Pa. 2020).

In **T.B.**, the Commonwealth sought to introduce factual evidence describing the interview process and use of an interview summary report form.

---

[7] To the extent Chiaramonte claims that the Commonwealth should have qualified Perez as an expert, we conclude that he waived this issue by failing to object to her testimony on this basis.  **See** Pa.R.E. 103(a); Pa.R.A.P. 302(a); **Radecki**, 180 A.3d at 455.

*Id*. at 920.  The trial court permitted a forensic interviewer—who had spoken to the victim but was not qualified as an expert at trial—to explain the significance of a check mark on the interview summary report indicating that the victim "provided sensory details."  *Id*. at 918.  Over the appellant's objection, the interviewer testified that "***[a] child's ability to describe a situation, including details of how something sounded or something tasted or something felt speaks to an experience having occurred***." *Id*. (emphasis in original).

On appeal, the *T.B.* Court affirmed the trial court's ruling on the basis that the interviewer testified to facts about the interview and did not offer an opinion on the victim's veracity or credibility.  *Id*. at 920.  The Court emphasized that "[t]echnical expertise does not *ipso facto* convert a fact witness, who might explain how data was gathered, into an expert witness, who renders an opinion based on the data." *Id*. at 919 (citation and quotation marks omitted).

In the instant matter, the trial court explained that Perez offered proper lay opinions similar to those in *T.B.*  Trial Court Opinion, 7/15/21, at 31.  In the court's view, Perez's testimony, when read as a whole, "stated that [the victim] offered a lot of details and did not mirror a parent's or other person's story . . .." *See id*.

We discern no abuse of discretion in the trial court's reasoning.  Like the witness in *T.B.*, Perez offered no opinions about whether Chiaramonte abused the victim or whether the victim was more credible due to the absence of "red

flags" during the forensic interview. **See T.B.**, 232 A.3d at 920. For these reasons, we conclude Chiaramonte's arguments concerning Perez's testimony merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/11/2022